USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/29/2023

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DARKPULSE, INC.; SOCIAL LIFE NETWORK, INC.; and REDHAWK HOLDINGS CORP., individually and on behalf of all others similarly situated,

                Plaintiffs,

- against -

CROWN BRIDGE PARTNERS, LLC, SOHEIL AHDOOT, and SEPAS AHDOOT,

                Defendants,

**22 Civ. 8163 (VM)**

**DECISION AND ORDER**

---

**VICTOR MARRERO, United States District Judge.**

Defendants Crown Bridge Partners LLC ("Crown Bridge"), Soheil Ahdoot ("Soheil"), and Sepas Ahdoot ("Sepas," and with Soheil, the "Individual Defendants," and collectively with Crown Bridge, "Defendants") move to dismiss plaintiffs DarkPulse, Inc. ("DarkPulse"), Social Life Network, Inc. ("Social Life"), and Redhawk Holdings Corp.'s ("Redhawk," and collectively with DarkPulse and Social Life, "Plaintiffs") complaint (see "Complaint," Dkt. No. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), and in the alternative, to strike the class allegations pursuant to Federal Rule of Civil Procedure 12(f) and 23(c)(1)(A). (See "Motion," Dkt. No. 23.) For the reasons stated below, Defendants' Motion is **GRANTED**.

## I.   BACKGROUND[1]

A.   FACTUAL HISTORY

Crown Bridge is a limited liability company based in, and organized under the laws of, New York. Soheil and Sepas are the principal owners and members of Crown Bridge as well as its sole employees.[2] Crown Bridge's business model is to purchase convertible notes[3] from microcap[4] securities issuers, convert those notes into newly-issued shares of stock, and then sell those shares on the public market. Companies generally issue convertible notes as a way to raise funds, particularly companies that cannot readily obtain financing from banks and other traditional lenders.

In the course of negotiations with microcap securities issuers, Crown Bridge typically obtained highly favorable terms in the convertible notes. Examples of such terms include a floating conversion discount ranging from 25% to 50% of the

---

[1] Except as otherwise noted, the following background derives from the Complaint. The Court takes all facts alleged therein as true and construes all justifiable inferences arising therefrom in the light most favorable to the plaintiffs, as required under the standard set forth in Section II below.

[2] Soheil and Sepas are citizens and residents of New York.

[3] A convertible note is a type of debt security that gives the lender the right to take repayment of a loan either in cash or in newly-issued company stock. Like an option or warrant, the lender is given the right to purchase company stock at a particular strike price; at conversion, the lender "converts" the note, i.e., it uses the accrued debt to "purchase" the stock instead of receiving cash.

[4] A microcap company is a publicly traded business with a market capitalization between approximately $50 million and $300 million.

prevailing market price for the past ten to twenty five prior trading days, the right to obtain additional discounts under certain circumstances, significant prepayment penalties that discouraged issuers from prepaying the convertible notes within the first 180 days and a prohibition on prepayment after 180 days, and the right to convert the convertible notes in increments, and the receipt of stock warrants[5] as an incentive to fund multiple tranches of a particular convertible note from an issuer. From January 2016 to December 2020, Crown Bridge purchased approximately 250 convertible notes from approximately 150 microcap securities issuers, including Plaintiffs.

DarkPulse is a corporation organized under the laws of Delaware with its principal place of business and headquarters in Texas. On February 5, 2019, DarkPulse entered into a convertible note with Crown Bridge. (See "DarkPulse Note," Dkt. No. 1-1.) Crown Bridge negotiated, drafted, transmitted, paid, and converted the DarkPulse Note from within the boundaries of New York. The DarkPulse Note included a New York forum-selection clause and a Nevada choice-of-law clause. (DarkPulse Note at 15.) At the time the Complaint was

---

[5] A warrant is a form of contract that gives the holder the right to purchase from a company a certain number of additional shares of stock at a specified price.

filed, Crown Bridge had fully converted out of the DarkPulse Note.

Social Life is a corporation organized under the laws of Nevada with its principal place of business and headquarters in Colorado. Social Life entered into two convertible note transactions with Crown Bridge, first on July 23, 2019 ("July Social Life Note," Dkt. No. 1-2), and second on August 19, 2019. ("August Social Life Note," Dkt. No. 1-3, and together with the July Social Life Note, the "Social Life Notes.") Crown Bridge negotiated, drafted, transmitted, paid, and converted the Social Life Notes from within the boundaries of New York. Similar to the DarkPulse Note, the Social Life Notes contained a New York forum-selection clause and a Nevada choice-of-law clause. (See July Social Life Note at 17; August Social Life Note at 16.) Crown Bridge has fully converted out of the Social Life Notes.

RedHawk is a corporation organized under the laws of Nevada with its principal place of business and headquarters in Louisiana. On December 13, 2017, RedHawk entered into a convertible note transaction with Crown Bridge. (See "RedHawk Note," Dkt. No. 1-4, collectively with the DarkPulse Note and the Social Life Note, the "Notes.") RedHawk also issued Crown Bridge a common stock purchase warrant, with an issuance date

of February 21, 2018.[6] (See "RedHawk Warrant," Dkt. No. 1-5.)
The RedHawk Note contained a New York forum-selection clause
and a Nevada choice-of-law clause, while the RedHawk Warrant
contains a Nevada choice-of-law clause. (RedHawk Note at 15;
RedHawk Warrant at 6.) Crown Bridge has fully converted out
of the RedHawk Note.

The Notes each contained terms that imposed minimum
effective annual interest rates ranging between fifty-one and
seventy-five percent, without accounting for additional
interest charged and or disguised as discounts, fees, and or
penalties. (See Dkt. No. 1-6.) All told, the interest rates
could reach between one hundred and eighteen to two hundred-
and fifty-one percent annual interest.

B.    PROCEDURAL HISTORY

On September 23, 2022, Plaintiffs filed their Complaint,
which consists of two counts. Count One alleges that
Defendants violated 18 U.S.C. § 1962(c) through the
collection of unlawful debt. As alleged, the Notes constitute
"unlawful debt" as defined by 18 U.S.C. § 1961(6) because
they violated New York's criminal usury laws and imposed
interest rates at least twice the rate allowed by New York of

---

[6] The document notes February 21, 2018 as the issuance date but is
unsigned.

twenty-five percent.[7] Count Two alleges that Defendants
violated 18 U.S.C. § 1962(d) by conspiring to collect unlawful
debt.

Following the exchange of pre-motion letters in
anticipation of Defendants filing a motion to dismiss the
Complaint, Defendants informed the Court that the parties had
been unable to avoid motion practice. (See Dkt. Nos. 15, 18-
19.) Upon review of the pre-motion letters, the Court
determined that a pre-motion conference was unnecessary and
directed the parties to advise whether they consent for the
Court to deem the pre-motion letters to constitute a fully
briefed motion to dismiss the Complaint and strike the class
allegations and for the Court to rule on the basis of the
limited briefs, or whether the parties requested supplemental
or full briefing. (See Dkt. No. 21.) The parties informed the
Court that Plaintiffs did not wish to proceed on the letters
and requested full briefing. (See Dkt. No. 22.) The parties
also submitted a schedule for briefing Defendants motion to
dismiss the Complaint. (See Id.)

Consistent with the parties' agreed upon schedule, on
January 13, 2023, Defendants filed their Motion, a memorandum

---

[7] The Complaint also alleges that Defendant engaged in a pattern of
racketeering activity in violation of 18 U.S.C. § 1962(c), specifically
wire fraud under 18 U.S.C. § 1343, which is racketeering activity under
18 U.S.C. 1961(1). Plaintiffs agreed to the dismissal of this claim and
their class allegations in their Opposition. (See Opposition at 1 n2.)

of law in support of the Motion (see "Memorandum," Dkt. No.
25), and a declaration in support of the Motion with
accompanying exhibits. (See "Fleischmann Declaration," Dkt.
No. 24.) Two weeks later, Defendants filed a notice of
supplemental authority, informing the Court of an Opinion and
Order by the Honorable Edgardo Ramos in DarkPulse, Inc. v.
FirstFire Global Opportunities Fund, LLC, 21-CV-11222, 2023
WL 199196 (S.D.N.Y. Jan. 17, 2023), dismissing a similar claim
to the one raised by Plaintiffs here.[8] (See Dkt. No. 26.) In
response to this adverse decision and others, Plaintiffs
requested leave to file an amended complaint that would add
"additional information, including Plaintiffs' headquarters
during all relevant times, and other causes of action in the
alternative," as well as removing class allegations. (See
Dkt. No. 27.) Defendants opposed this request, arguing that
granting leave to amend would be prejudicial because
Plaintiffs had previously declined to amend the Complaint and
insisted on formal briefing but now that Defendants had
incurred the expense of formally briefing a motion to dismiss,
Plaintiffs sought leave to file an amended complaint. (See

---

[8] Defendants also provided the Court with a copy of DarkPulse's Form
10-K Filings, which the FirstFire court took judicial notice of in its
decision and found that they showed "that the company entered into at
least three other agreements with a Nevada choice-of-law clause . . .
demonstrat[ing] the firm's amenability to transacting business there."
FirstFire, 2023 WL 199196 at *12, 12 n.20.

Dkt. No. 28.) At the request of Plaintiffs, the Court held the parties' briefing schedule in abeyance pending its decision on the request to amend. (See Dkt. Nos. 29-30.)

On April 11, 2023, the Court denied Plaintiffs' request for leave to file an amended complaint. (See Dkt. No. 31.) The Court agreed with the Defendants that granting leave to amend would be prejudicial and justice did not require leave be given. (Id.) The Court also noted that the briefing on the motion to dismiss in FirstFire, where DarkPulse has the same counsel and raises a similar claim as in this case, was completed months before this case was filed, so Plaintiffs were not bereft of time to prepare their complaint accordingly. (Id.) Having denied Plaintiffs request for leave to amend, the Court directed the parties to resume their briefing on the Motion. (Id.) Plaintiffs subsequently filed a memorandum of law in opposition to the Motion (see "Opposition," Dkt. No. 32), and Defendants filed a reply memorandum of law in support of the Motion. (See "Reply," Dkt. No. 35.)

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly,

550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In other words, a complaint should not be dismissed when the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

In resolving a Rule 12(b)(6) motion, the Court's task is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks omitted), aff'd sub nom. Tenney v. Credit Suisse First Boston Corp., No. 05 Civ. 3430, 2006 WL 1423785 (2d Cir. May 19, 2006); accord In re MF Glob. Holdings Ltd. Sec. Litig., 982 F. Supp. 2d 277, 302 (S.D.N.Y. 2013). In this context, the Court must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). The requirement that a court accept the factual allegations in the complaint as true does not, however, extend to legal conclusions. See Iqbal, 556 U.S. at 678.

A district court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Leonard F. v. Israel Disc. Bank of New York, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

### III. **DISCUSSION**

A.     COUNT ONE: UNLAWFUL DEBT COLLECTION UNDER 18 U.S.C. 1962(C)

Count One of the Complaint alleges that Defendants violated 18 U.S.C. § 1962(c) through the collection of unlawful debt. As alleged, the Notes constitute "unlawful debt" as defined by 18 U.S.C. § 1961(6) because they violated New York's criminal usury laws and imposed interest rates at least twice the rate allowed by New York, twenty-five percent.

18 U.S.C. § 1962(c) prohibits "any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). As relevant here, an "'unlawful debt' means a debt . . . which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and . . . which was incurred in connection with .

10

. . the business of lending money or a thing of value at a rate usurious under State of Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6). Thus, to allege a 1962(c) claim for the collection of unlawful debt, "a plaintiff must allege that (1) the debt was unenforceable in whole or in part because of state or federal laws relating to usury, (2) the debt was incurred in connection with the business of lending money at a usurious rate and (3) the usurious rate was at least twice the enforceable rate." Dae Hyuk Kwon v. Santander Consumer USA, 742 Fed. Appx. 537, 539 (2d Cir. 2018) (alterations and quotation marks omitted).

Here, Plaintiffs' claim requires that the Court disregard the clear Nevada choice-of-law provisions in the Notes (DarkPulse Note at 15; July Social Life Note at 17; August Social Life Note at 16; RedHawk Note at 15) and find instead that New York law governs. (See Opposition at 3-6.) This is because unlike New York, Nevada does not have a criminal usury statute. NRS 99.050. The Court finds the reasoning and conclusions of the FirstFire court to be persuasive and applicable here, including as applied to Social Life and RedHawk. See FirstFire, 2023 WL 199196, at *12 (holding that Nevada and Delaware choice-of-law provisions applied to convertible notes, not New York law,

and dismissing 18 U.S.C. 1962(c) claim). A court will "generally enforce choice-of-law clauses and contracts . . . so as to effectuate the parties' intent." Ministers and Missionaries Ben. Bd. V. Snow, 26 N.Y.3d 466, 470 (2015). "New York courts will only disregard clear choice-of-law provisions upon a showing that: (1) the chosen state has no reasonable connection to the parties or the contract, (2) the agreement was obtained through fraud, or (3) the chosen state's law violates a fundamental public policy of New York." FirstFire, 2023 WL 199196, at *12. Plaintiffs fail to satisfy this burden.

Regarding the first factor, as the FirstFire court found, DarkPulse has repeatedly entered into agreements with a Nevada choice-of-law clause, demonstrating their amenability to doing business there. Id. For their part, Social Life and RedHawk are both organized under Nevada law and so have a reasonable connection to that state. As to the second factor, there is no allegation that any of the Notes were obtained through fraud.

Finally, considering the third factor, Plaintiffs fail to demonstrate that enforcing Nevada law on the Notes, specifically usury law, would violate a fundamental public policy of New York. As the Second Circuit has explained, there is "a longstanding public policy in New York in favor of

enforcing its usury laws to protect those of its residents who enter consumer debt contracts" and "[i]n consumer loan contracts, choice-of-law provisions specifying foreign jurisdictions without usury laws are unenforceable in New York as against its public policy." United States v. Moseley, 980 F.3d 9, 21-22 (2d Cir. 2020). By contrast, "corporations conducting their business transactions should be treated differently from individual consumers seeking personal credit." Id. Plaintiffs are "corporations—the antithesis of the type of needy and unsophisticated consumers" for whom New York's public policy against usury counsels providing relief from a choice-of-law clause. Id.

Having found no reason to disregard the parties' explicit choice of Nevada law in the Notes, and given that Nevada does not have criminal usury laws, the Court finds that the Complaint fails to sufficiently allege that Defendants violated 18 U.S.C. § 1962(c). Accordingly, Defendants' Motion to dismiss Count One is **GRANTED.**

B.   COUNT TWO: CONSPIRACY TO COLLECT UNLAWFUL DEBT UNDER

     18 U.S.C. § 1962(d)

For the same reasons explained above, the Court finds that the Complaint fails to state a claim that Defendants conspired to collect unlawful debt in violation of 18 U.S.C.

§ 1962(d). Accordingly, Defendants Motion to dismiss Count Two is **GRANTED**.

### IV.   ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (see Dkt. No. 23) filed by defendants Crown Bridge Partners LLC, Soheil Ahdoot, and Sepas Ahdoot to dismiss plaintiffs DarkPulse, Inc., Social Life Network, Inc., and Redhawk Holdings Corp.'s complaint (see Dkt. No. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), and in the alternative, to strike the class allegations pursuant to Federal Rule of Civil Procedure 12(f) and 23(c)(1)(A), is **GRANTED**.

The Clerk's Office is respectfully directed to close the case and terminate any pending motions.

**SO ORDERED.**

Dated:   New York, New York
         29 September 2023

_____
          Victor Marrero
          U.S.D.J.